Kevin G. Cooper, Esq.
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
kcooper@carellabyrne.com

Matthew R. Mendelsohn, Esq.
Adam M. Epstein, Esq.
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel.: (973) 228-9898
mrm@mazieslater.com
aepstein@mazieslater.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DORINDA BYNUM, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENZO BIOCHEM, INC., ENZO CLINICAL LABS, INC. and LAB CORPORATION OF AMERICAN HOLDINGS, <br><br> Defendants. | Civil Action No. _____ <br><br><br><br><br> **COMPLAINT AND** <br> **<u>DEMAND FOR JURY TRIAL</u>** |

## TABLE OF CONTENTS

**Section**                                                                                    **Pages**

I.      NATURE OF THE ACTION.................................................................... 1

II.     JURISDICTION AND VENUE.............................................................. 2

III.    PARTIES............................................................................................... 3

     A.    Named Plaintiff ......................................................................... 3

     B.    Defendants.................................................................................. 4

IV.     FACTUAL BACKGROUND ................................................................ 4

     A.    Enzo Biochem is a Prominent Healthcare Services Company............................ 4

     B.    The Data Breach ........................................................................ 5

     C.    Defendants Violated HIPAA's Requirements To Safeguard Data .................... 5

     D.    Defendants were On Notice That Highly Valuable Personal Information Of Their Patients Could Be Breached ................................................................ 9

     E.    Consequences of the Data Breach for Consumers ........................................... 10

V.      CLASS ACTION ALLEGATIONS...................................................... 12

        NEGLIGENCE.................................................................................. 15

        NEGLIGENCE *PER SE* ...................................................................... 19

        BREACH OF CONTRACT................................................................ 22

        BREACH OF IMPLIED CONTRACT............................................... 23

        UNJUST ENRICHMENT.................................................................. 24

        DECLARATORY JUDGMENT........................................................ 27

        NEW JERSEY CONSUMER FRAUD ACT N.J.S.A. § 56:8-1, *ET SEQ.* .................. 28

VI.     REQUEST FOR RELIEF.................................................................... 30

VII.    JURY TRIAL DEMANDED ............................................................... 32

Plaintiff Dorinda Bynum ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Enzo Biochem, Inc, Enzo Clinical Labs, Inc., and Lab Corporation of American Holdings ("Enzo Biochem," "Enzo Clinical," and "Labcorp," collectively, "Defendants"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## I.    NATURE OF THE ACTION

1.    Medical and financial records represent the most sensitive information available concerning a person's private affairs. These records reveal intimate and personal aspects of the human condition, such as illnesses that might carry social stigma and details about substance abuse, family planning and mental health. Congress has passed legislation under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") in order to protect this highly confidential data, because in the wrong hands, bad actors may target and exploit the most sensitive and vulnerable populations among the public.

2.    Defendants had obligations to safeguard this information. This lawsuit concerns Defendants' failure to carry that burden and the resulting harm to Plaintiff and the Class. On May 30, 2023, Defendants confirmed that they had suffered a ransomware attack that disrupted its computer systems ("Data Breach"). Enzo Biochem detected the attack on April 6, 2023, and waited approximately two months before informing the public and the 2.47 million members of the Class.

3.    Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. This includes names, addresses, Social Security numbers, driver's license numbers, financial information, medical information and health insurance information (collectively, the "Personal Information") and includes personally identifiable

information ("PII") and protected health information ("PHI") as defined by HIPAA that Defendants collected and maintained.

4.      As a result of Defendants' actions, Plaintiff and the Class Members experienced damages from: (i) theft of their Personal Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Personal Information; (iii) loss of value of their Personal Information; (iv) the amount of ongoing reasonable identity defense and credit monitoring services made necessary as mitigation measures; (v) Defendants' retention of profits attributable to Plaintiff's and other customers' Personal Information that Defendants failed to adequately protect; (vi) economic and non-economic impacts that flow from imminent, and ongoing threat of fraud and identity theft to which Plaintiff are now exposed to; (vii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of this data breach; and (viii) overpayments of Defendants' products and/or services which Plaintiff purchased.

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 1,000 members of the Class, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendants are citizens.

6.      This Court has personal jurisdiction over Enzo Biochem and Enzo Clinical  because they are headquartered in New York; this Court has personal jurisdiction over all Defendants because the wrongful acts alleged in this Complaint were committed in New York; and Defendants

have intentionally availed themselves of this jurisdiction by marketing and selling products and services in New York.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and 28 U.S.C. § 1391(d) because the transactions giving rise to Plaintiff's claims occurred in New York; and 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

## III.    PARTIES

### A.    Named Plaintiff

8.    Plaintiff Dorinda Bynum is an individual who, upon information and belief, had her Personal Information compromised in the Data Breach, and brings this action on behalf of herself and all those similarly situated both across the United States and within New Jersey.

9.    Plaintiff Bynum resides in Atlantic City, New Jersey who, like all class members, received a copy of a notice from Defendants dated June 1, 2023 and who, upon information and belief, had her Personal Information compromised in the Data Breach described therein.

10.    As a direct and proximate result of the breach, Plaintiff Bynum has made reasonable efforts to mitigate the impact of the breach.

11.    Plaintiff Bynum is very concerned about identity theft and the consequences of such theft and fraud resulting from the Data Breach.

12.    Plaintiff Bynum suffered actual injury from having her Personal Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of Plaintiff Bynum's Personal Information, a form of property that Defendants obtained from Plaintiff Bynum; (b) violation of Plaintiff Bynum's privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

13.    As a result of the Data Breach, Plaintiff Bynum anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is and will continue to be at increased risk of identity theft and fraud for years to come.

**B.    Defendants**

137.    Enzo Biochem is a New York Corporation, with its principal place of business at 81 Executive Blvd. Suite 3, Farmingdale, NY, United States, 11735.

138.    Enzo Clinical is a New York Corporation, with its principal place of business at 28 Liberty Street, New York, NY, United States, 10005.

139.    Labcorp is a North Carolina Corporation, with its principal place of business at 531 South Spring Street, Burlington, NC, United States, 27215.

**IV.    FACTUAL BACKGROUND**

**A.    Enzo Biochem is a Prominent Healthcare Services Company**

140.    Enzo Biochem defines itself as "a pioneer in molecular diagnostics, leading the convergence of clinical laboratories, life sciences, and intellectual property through the development of unique diagnostic platform technologies that provide numerous advantages over previous standards."[1]

141.    Enzo Biochem understands the importance of protecting Plaintiff's Personal Information and is regulated by HIPAA. In its Privacy Policy, Enzo Biochem promised that Plaintiff's data "will not be transferred outside the company without your prior consent" and that it "will make [] every reasonable effort to protect the information collected."[2] Yet because of Enzo

---

[1] Enzo Biochem, available at: https://www.enzo.com/ (last accessed: June 16, 2023).
[2] Privacy Policy, Enzo Biochem, available at: https://enzo.com/footer-links/privacy-policy (last visited June 16, 2023).

Biochem's and Defendants' failure to safeguard Plaintiff's information, it has been disclosed at great harm to Plaintiff and Class Members.

**B.    The Data Breach**

142.    On May 30, 2023, Defendants confirmed they had suffered a ransomware attack that disrupted their computer systems. The health system detected the attack on April 6, 2023, blocked the unauthorized access, and launched an investigation to determine the nature and scope of the breach. Defendants confirmed that the hackers gained access to part of their systems from April 4, 2023 to April 6, 2023. The stolen information included names, addresses, Social Security numbers, driver's license numbers, financial information, medical information and health insurance information.

143.    Plaintiff and other class members received a letter dated June 1, 2023 stating, *inter alia*, the following:

> **What Happened?** On April 6, 2023, we identified a ransomware incident on our computer network. We immediately took steps to secure our systems and began an investigation with the assistance of a cybersecurity firm. We also notified law enforcement. The investigation determined that an unauthorized party accessed files on our systems between April 4, 2023 and April 6, 2023.

**C.    Defendants Violated HIPAA's Requirements To Safeguard Data**

144.    Defendants had duties to ensure that all information they collected and stored was secure, and that they maintained adequate and commercially reasonable data security practices to ensure the protection of plan members' Personal Information.

145.    Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

146.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.  *See* 45 C.F.R. § 160.103.

147.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

148.    HIPAA requires that Defendants implement appropriate safeguards for this information.

149.    HIPAA requires that Defendants provide notice of a breach of unsecured protected health information, which includes protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons—*i.e.* non-encrypted data.

150.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says, "represent the industry standard for good

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

151.    Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule).  This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported."  The four-factor risk assessment focuses on:

(1)    the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);

(2)    the recipient of the PHI;

(3)    whether the PHI was actually acquired or viewed; and,

(4)    the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

152.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

153.    Despite these requirements, Defendants failed to comply with their duties under HIPAA and their own Privacy Practices. Indeed, Defendants failed to:

a)    Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b)    Adequately protect Plaintiff's and the Class Members' Personal Information;

---

[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html.
[5] 78 Fed. Reg. 5641-46; *see also* 45 C.F.R. § 164.304.

c)    Ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d)    Implement technical policies and procedures for electronic information systems that maintain electronically protected health information to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e)    Implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f)    Implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g)    Protect against reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h)    Take safeguards to ensure that Defendants' business associates adequately protect protected health information;

i)    Conduct the Four Factor Risk Analysis following the Breach;

j)    Properly send notice to Plaintiff and the Class pursuant to 45 C.F.R. §§ 164.400-414;

k)    Ensure compliance with the electronically protected health information security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

l)    Train all members of its workforce effectively on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out its functions and to maintain security of protected health information, in violation of 45 C.F.R. § 164.530(b).

154.    Defendants failed to comply with their duties under HIPAA and their own privacy policies despite being aware of the risks associated with unauthorized access of members' Personal Information.

**D.  Defendants were On Notice That Highly Valuable Personal Information Of Their <u>Patients Could Be Breached</u>**

155.   Defendants were, or should have been, aware that they were collecting highly valuable data, for which Defendants knew, or should have known, there is an upward trend in data breaches in recent years.[6]  Accordingly, Defendants were on notice of the harms that could ensue if they failed to protect patients' data.

156.   As early as 2014, the FBI alerted the healthcare industry that they were an increasingly preferred target of hackers, stating "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or Personally Identifiable Information (Personal Information)" so that these companies can take the necessary precautions to thwart such attacks.[7]

157.   Personal Information is a valuable commodity to identity thieves. Compromised Personal Information is traded on the "cyber black-market." As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, social security numbers and other Personal Information directly on various dark web[8] sites making the information publicly available.[9]

---

[6]    *Healthcare Data Breach Statistics*, HIPAA Journal, https://www.hipaajournal.com/healthcare-data-breach-statistics/ (last visited June 16, 2023) ("Our healthcare statistics clearly show there has been an upward trend in data breaches over the past 9 years, with 2018 seeing more data breaches reported than any other year since records first started being published.").

[7]    Reuters, *FBI warns healthcare firms they are targeted by hackers*, August 20, 2014, http://www.reuters.com/article/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820 (last visited June 16, 2023).

[8]    The dark web refers to encrypted content online that cannot be found using conventional search engines and can only be accessed through specific browsers and software. MacKenzie Sigalos, *The dark web and how to access it* (Apr. 14, 2018), https://www.cnbc.com/2018/04/13/the-dark-web-and-how-to-access-it.html (last visited June 16, 2023).

[9]    *Here's How Much Your Personal Information Is Selling for on the Dark Web*, https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-

158.    Further, medical databases are particularly high value targets for identity thieves. According to one report, a stolen medical identity has a $50 street value on the black market, whereas a Social Security number sells for only $1.[10]

E.    **Consequences of the Data Breach for Consumers**

159.    Plaintiff and Class Members have suffered actual harm and will continue to be harmed as a result of Defendants' conduct. Defendants failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Defendants' failure to keep Plaintiff's and Class Members' Personal Information secure has severe ramifications. Given the sensitive nature of the Personal Information stolen in the Data Breach – names, addresses, Social Security numbers, driver's license numbers, financial information, medical information and health insurance information – hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. Class Members may be subject to blackmail from nefarious actors concerning the disclosure of their medical records. As a result, Plaintiff and Class Members have suffered injury and face an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

160.    Plaintiff's stolen Personal Information may now be circulating on the dark web and it is highly valuable. Malicious actors use Personal Information to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' Personal Information to open new financial accounts, open new utility accounts, obtain

---

selling-for-on-the-dark-web/ (last visited June 16, 2023); McFarland et al., *The Hidden Data Economy*, at 3, *available at* https://www.mcafee.com/enterprise/en-us/assets/reports/rp-hidden-data-economy.pdf (last visited June 16, 2023).

[10]    *Study: Few Aware of Medical Identity Theft Risk*, Claims Journal (June 14, 2012), https://www.claimsjournal.com/news/national/2012/06/14/208510.htm (last visited June 16, 2023).

medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create synthetic identities.

161.    Further, malicious actors often wait months or years to use the Personal Information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Personal Information, meaning individuals can be the victim of several cybercrimes stemming from a single data breach.

162.    The U.S. Government Accountability Office determined that "stolen data may be held for up to a year or more before being used to commit identity theft," and that "once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years."[11] Moreover, there is often significant lag time between when a person suffers harm due to theft of their Personal Information and when he discover the harm. Plaintiff and Class Members will therefore need to spend time and money to continuously monitor their accounts for years to ensure their Personal Information obtained in the Data Breach is not used to harm them. Plaintiff and Class Members thus have been harmed in the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach. In other words, Plaintiff and Class Members have been harmed by the value of identity protection services they must purchase in the future to ameliorate the risk of harm they now face due to the Breach.

163.    Plaintiff and Class Members have also been harmed and damaged in the amount of the market value of the hacker's access to their Personal Information that was permitted without

---

[11] U.S. Gov't Accountability Off., GAO-07-737, *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* 42 (June 2007), available at https://www.govinfo.gov/content/pkg/GAOREPORTS-GAO-07-737/html/GAOREPORTS-GAO-07-737.htm (last visited June 16, 2023).

authorization by Defendants. This market value for access to Personal Information can be determined by reference to both legitimate and illegitimate markets for such information.

164.    In sum, Plaintiff and Class Members were injured as follows: (i) theft of their Personal Information and the resulting loss of privacy rights in that information; (ii) improper disclosure of their Personal Information; (iii) loss of value of their Personal Information; (iv) the lost value of access to Plaintiff's and Class Members' Personal Information permitted by Defendants; (v) the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; (vi) Defendants' retention of profits attributable to Plaintiff's and Class Members' Personal Information that Defendants failed to adequately protect; (vii) the certain, imminent, and ongoing threat of fraud and identity theft, including the economic and non-economic impacts that flow therefrom; (viii) ascertainable out-of-pocket expenses and the value of their time allocated to fixing or mitigating the effects of the Data Breach; (ix) overpayments to Defendants for goods and services purchased, as Plaintiff and Class Members reasonably believed a portion of the price they paid for those goods and services would fund reasonable security measures that would protect their Personal Information, which was not the case; and (x) nominal damages.

## V.    CLASS ACTION ALLEGATIONS

165.    Plaintiff brings this case as a class action on behalf of a Nationwide Class and a New Jersey Subclass, defined as follows:

### Nationwide Class

All persons in the United States whose Personal Information was maintained on the Defendants systems that were compromised as a result of the breach announced by Defendants on or around May 30, 2023.

**New Jersey Sub-Class**

New Jersey Sub-Class: All persons in the State of New Jersey whose Personal Information was maintained on Defendants systems that were compromised as a result of the breach announced by Defendants on or around May 30, 2023.

166.     The Classes are each so numerous that joinder of all members is impracticable. On information and belief, the Classes each have more than 1,000 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

167.     There are numerous questions of law and fact common to Plaintiff and Class Members. These common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendants owed Plaintiff and other Class Members a duty to implement and maintain reasonable security procedures and practices to protect their Personal Information, and whether they breached that duty;

b.     Whether Defendants continues to breach duties to Plaintiff and other Class Members;

c.     Whether Defendants' data security systems before the data breach met industry standards;

d.     Whether Defendants failed to adequately respond to the data breach, including failing to investigate it diligently and promptly notify affected individuals in the most expedient time possible and without unreasonable delay;

e.     Whether Plaintiff and other Class Members' Personal Information was compromised in the data breach; and

f.     Whether Plaintiff and other Class Members are entitled to damages as a result of Defendants' conduct.

168.     Plaintiff's claims are typical of the Classes' claims. Plaintiff suffered the same injury as Class Members—*i.e.*, Plaintiff's Personal Information was compromised in the Data Breach.

169.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action

litigation, including data breach class actions. Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor their counsel have interests that conflict with those of the proposed Classes.

170.    Defendants have engaged in a common course of conduct toward Plaintiff and other Class Members. The common issues arising from this conduct that affect Plaintiff sand other Class Members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

171.    A class action is the superior method for the fair and efficient adjudication of this controversy. In this regard, the Class Members' interests in individually controlling the prosecution of separate actions are low given the magnitude, burden, and expense of individual prosecutions against large corporations such as Defendants. It is desirable to concentrate this litigation in this forum to avoid burdening the courts with individual lawsuits. Individualized litigation presents a potential for inconsistent or contradictory judgments, and also increases the delay and expense to all parties and the court system presented by the legal and factual issues of this case. By contrast, the class action procedure here will have no management difficulties. Defendants' records and the records available publicly will easily identify the Class Members. The same common documents and testimony will be used to prove Plaintiff's claims.

172.    A class action is appropriate under F.R.C.P. Rule 23 because Defendants have acted or refused to act on grounds that apply generally to Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate as to all Class Members.

## COUNT 1
### NEGLIGENCE
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

173.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

174.    Defendants collected sensitive Personal Information from Plaintiff and Class Members when using Defendants products and services.

175.    Defendants owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting their Personal Information in their possession from being compromised, lost, stolen, accessed or misused by unauthorized persons. More specifically, this duty included, among other things: (a) designing, maintaining, and testing Defendants' security systems to ensure that Plaintiff's and Class Members' Personal Information in Defendants' possession was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

176.    Defendants' duty to use reasonable care arose from several sources, including but not limited to those described herein.

177.    Defendants had common law duties to prevent foreseeable harm to Plaintiff and the Class Members. These duties existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. Not only was it foreseeable that Plaintiff and Class Members would be harmed by Defendants' failure to protect their Personal Information because hackers routinely attempt to steal such information and use it for nefarious purposes,

Defendants knew that it was more likely than not Plaintiff and other Class Members would be harmed if it allowed such a breach.

178.    Defendants' duty to use reasonable security measures also arose as a result of the special relationship that existed between Defendants, on the one hand, and Plaintiff and Class Members, on the other hand. The special relationship arose because Plaintiff and Class Members entrusted Defendants with their Personal Information and sensitive healthcare information. Defendants alone could have ensured that their security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

179.    Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

180.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider.  *See* 45 C.F.R. § 160.103.

181.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

182.    HIPAA requires that Defendants implement appropriate safeguards for this information.

183.   Defendants' duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect Personal Information by companies such as Defendants. Various FTC publications and data security breach orders further form the basis of Defendants' duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

184.   Defendants admits that they have a responsibility to protect consumer data, that it is entrusted with this data, and that they did not live up to their responsibility to protect the Personal Information at issue here.

185.   Defendants knew or should have known that their computing systems and data storage architecture were vulnerable to unauthorized access and targeting by hackers for the purpose of stealing and misusing confidential Personal Information.

186.   Defendants also had a duty to safeguard the Personal Information of Plaintiff and Class Members and to promptly notify them of a breach because of state laws and statutes that require Defendants to reasonably safeguard sensitive Personal Information, as detailed herein.

187.   Timely, adequate notification was required, appropriate and necessary so that, among other things, Plaintiff and Class Members could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, and take other steps to mitigate or ameliorate the damages caused by Defendants' misconduct.

188.    Defendants breached the duties it owed to Plaintiff and Class Members described above and thus was negligent. Defendants breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Personal Information of Plaintiff and Class Members; (b) detect the Data Breach while it was ongoing; (c) maintain security systems consistent with industry standards during the period of the Data Breach; (d) comply with regulations protecting the Personal Information at issue during the period of the Data Breach; and (e) disclose in a timely and adequate manner that Plaintiff's and the Class Members' Personal Information in Defendants' possession had been or was reasonably believed to have been stolen or compromised.

189.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and Class Members, the Personal Information that was stolen in this Data Breach would not have been compromised.

190.    Defendants' failure to take proper security measures to protect the sensitive Personal Information of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional act, namely the unauthorized access of Plaintiff's and Class Members' Personal Information.

191.    Plaintiff and Class Members were foreseeable victims of Defendants' inadequate data security practices, and it was also foreseeable that Defendants' failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members as described in this Complaint.

192.    As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of

identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Personal Information; illegal sale of the compromised Personal Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Personal Information; lost value of access to their Personal Information permitted by Defendants; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

## COUNT 2
### NEGLIGENCE *PER SE*
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on Behalf of Plaintiff and the New Jersey Subclass**

193.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

194.    Defendants are covered by HIPAA (*see* 45 C.F.R. § 160.102) and as such are required to comply with the HIPAA Privacy Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

195.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information"

which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. *See* 45 C.F.R. § 160.103.

196.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

197.    HIPAA requires that Defendants implement appropriate safeguards for this information.

198.    Section 5 of the FTC Act, 15 U.S.C. § 45, also prohibits "unfair. . . practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice by companies such as Defendants of failing to use reasonable measures to protect Personal Information.

199.    The FTC publications and orders also form the basis of Defendants' duty.

200.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information and not complying with applicable industry standards. Defendants' conduct was particularly unreasonable given the nature and amount of Personal Information it obtained, stored, and disseminated, and the foreseeable consequences of a data breach involving a company as large as Defendants, including, specifically the damages that would result to Plaintiff and Class Members.

201.    In addition, under state data security statutes, Defendants had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' Personal Information.

202.    Defendants' violation of HIPAA and Section 5 of the FTC Act (and similar state statutes) constitutes negligence *per se*.

203.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

204.    The harm that has occurred is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

205.    Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Personal Information.

206.    Plaintiff and Class Members were foreseeable victims of Defendants' violations of HIPAA, the FTC Act, and state data security statutes. Defendants knew or should have known that their failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' Personal Information would cause damage to Plaintiff and Class Members.

207.    But for Defendants' violation of the applicable laws and regulations, Plaintiff's and Class Members' Personal Information would not have been accessed by unauthorized parties.

208.    As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Personal Information; illegal sale of the compromised Personal Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in

response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Personal Information; lost value of access to their Personal Information permitted by Defendants; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of Defendants' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

**COUNT 3**
**BREACH OF CONTRACT**
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on**
**Behalf of Plaintiff and the New Jersey Sub-class**

209.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

210.    Plaintiff and Class Members entered into a valid and enforceable contract through which Defendants provided services to Plaintiff and Class Members. That contract included promises by Defendants to secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

211.    Defendants' Privacy Policies memorialized the rights and obligations of Defendants and their patients.

212.    Defendants promised to comply with all HIPAA standards, state and federal law, to ensure that Plaintiff's and Class Members' PHI was protected, secured, kept private, and not disclosed.

213.    Plaintiff and Class Members fully performed their obligations under their contracts with Defendants.

22

214.    However, Defendants did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Personal Information and PHI, and therefore Defendants breached their contract with Plaintiff and Class Members.

215.    Defendants allowed third parties to access, copy, and/or transfer Plaintiff's and Class Members' Personal Information and PHI without permission. Therefore, Defendants breached the Privacy Policy with Plaintiff and Class Members.

216.    Defendants' failure to satisfy their confidentiality and privacy obligations resulted in Defendants providing services to Plaintiff and Class Members that were of a diminished value.

217.    As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein.

218.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT 4
### BREACH OF IMPLIED CONTRACT
On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on
Behalf of Plaintiff and the New Jersey Sub-class

219.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

220.    This Count is pleaded in the alternative to Count 3 above.

221.    Defendants provides medical services to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendants regarding the provision of those services through their collective conduct.

222.    Through Defendants' provision of services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Personal Information and PHI in accordance with Defendants' policies, practices, and applicable law, including the FTC Act and HIPAA.

223.    As part of receiving services, Plaintiff and Class Members turned over valuable Personal Information and PHI to Defendants. Accordingly, Plaintiff and Class Members bargained with Defendants to securely maintain and store their Personal Information.

224.    Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Personal Information.

225.    Plaintiff and Class Members have been damaged by Defendants' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

**COUNT 5**
**UNJUST ENRICHMENT**
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on**
**Behalf of Plaintiff and the New Jersey Subclass**

226.    Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

227.    Plaintiff and Class Members have an interest, both equitable and legal, in the Personal Information about them that was conferred upon, collected by, and maintained by Defendants and that was ultimately stolen in the Defendants Data Breach.

228.    Defendants were benefitted by the conferral upon it of the Personal Information pertaining to Plaintiff and Class Members and by its ability to retain, use, sell, and profit from that information. Defendants understood that they were in fact so benefitted.

229.    Defendants also understood and appreciated that the Personal Information pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Defendants maintaining the privacy and confidentiality of that Personal Information.

230.    But for Defendants' willingness and commitment to maintain their privacy and confidentiality, that Personal Information would not have been transferred to and entrusted with Defendants.

231.    Because of their use of Plaintiff's and Class Members' Personal Information, Defendants sold more services and products than they otherwise would have. Defendants were unjustly enriched to the detriment of Plaintiff and Class Members by profiting from the additional services and products they were able to market, sell, and create.

232.    Defendants also benefitted through their unjust conduct by retaining money that they should have used to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Personal Information.

233.    Defendants also benefitted through their unjust conduct in the form of the profits they gained through the use of Plaintiff's and Class Members' Personal Information.

234.    It is inequitable for Defendants to retain these benefits.

235.    As a result of Defendants' wrongful conduct as alleged in this Complaint (including among things their failure to employ adequate data security measures, their continued maintenance and use of the Personal Information belonging to Plaintiff and Class Members without having adequate data security measures, and their other conduct facilitating the theft of that Personal Information), Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

236.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Personal Information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

237.    It is inequitable, unfair, and unjust for Defendants to retain these wrongfully obtained benefits. Defendants' retention of wrongfully obtained monies would violate fundamental principles of justice, equity, and good conscience.

238.    The benefit conferred upon, received, and enjoyed by Defendants were not conferred officiously or gratuitously, and it would be inequitable, unfair, and unjust for Defendants to retain the benefit.

239.    Defendants' defective security and their unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Personal Information and has caused the Plaintiff and Class Members other damages as described herein.

240.    Plaintiff has no adequate remedy at law.

241.    Defendants are therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Defendants as a result of their wrongful conduct, including specifically: the value to Defendants of the Personal Information that was stolen in the Data Breach; the profits Defendants received and are receiving from the use of that information; the amounts that Defendants overcharged Plaintiff and Class Members for use of Defendants' products and services; and the amounts that Defendants should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Personal Information.

**COUNT 6**
**DECLARATORY JUDGMENT**
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on**
**Behalf of Plaintiff and the New Jersey Subclass**

242. Plaintiff repeats and realleges the allegations contained in Sections I through V as if fully set forth herein.

243. Under the Declaratory Judgment Act, N.J.S.A. 2A:16-51, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. The Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

244. An actual controversy has arisen in the wake of the Defendants Data Breach regarding Defendants' present and prospective common law and other duties to reasonably safeguard their patients' Personal Information and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Personal Information. Plaintiff continue to suffer injury as a result of the compromise of their Personal Information and remain at imminent risk that further compromises of their Personal Information will occur in the future given the publicity around the Data Breach and the nature and quantity of the Personal Information stored by Defendants.

245. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendants continue to owe a legal duty to secure patients' Personal Information and to timely notify consumers of a data breach under the common law, HIPAA, Section 5 of the FTC Act, and various state statutes;

    b.    Defendants continue to breach this legal duty by failing to employ reasonable measures to secure consumers' Personal Information.

246.    The Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect consumers' Personal Information.

247.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach of Defendants' systems. The risk of another such breach is real, immediate, and substantial. If another breach of Defendants' systems occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

248.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another massive data breach of Defendants' systems occurs, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is far less than the cumulative damage to Plaintiff and Class Members, and Defendants have a pre-existing legal obligation to employ such measures.

249.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach of Defendants' systems, thus eliminating the additional injuries that would result to Plaintiff and Class Members whose confidential information would be further compromised.

**COUNT 7**
**NEW JERSEY CONSUMER FRAUD ACT N.J.S.A. § 56:8-1, *ET SEQ.***
**On Behalf of Plaintiff and the Nationwide Class, or Alternatively, on**
**Behalf of Plaintiff and the New Jersey Subclass**

250.    Plaintiff realleged and incorporate by reference preceding factual allegations found in Sections I through V as if fully set forth herein.

251.    Plaintiff and all Class members are "consumers" as that term is defined by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1.

252.    Defendants are a "person" as that term is defined by the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1(d).

253.    Defendants' conduct as alleged related to "sales," "offers for sale," or "bailment" as defined by N.J.S.A. 56:8-1.

254.    Defendants advertised, offered, or sold goods or services in New Jersey and engaged in trade or commerce directly or indirectly affecting the citizens of New Jersey.

255.    Defendants solicited Plaintiff and Class Members to do business and uniformly and knowingly misrepresented that by joining, their Personal Information was safe, confidential, and protected from intrusion, hacking, or theft.

256.    Defendants misrepresented that they would protect the privacy and confidentiality of Plaintiff's and Class Members' Personal Information, including by implementing and maintaining reasonable security measures.

257.    Defendants intended to mislead Plaintiff and Class Members and induce them to rely on their misrepresentations and omissions.

258.    Defendants failed to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Personal Information in violation of N.J.S.A. 56:8-162, which was a direct and proximate cause of the Data Breach.

259.    Defendants failed to provide notice to Plaintiff and Class Members or otherwise comply with the notice requirements of N.J.S.A. 56:8-163.

260.    Defendants' acts and omissions, as set forth evidence a lack of good faith, honesty in fact and observance of fair dealing, so as to constitute unconscionable commercial practices, in violation of N.J.S.A. 56:8-2.

261.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class Members are required to expend sums to protect and recover their Personal Information, have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information, and thereby suffered ascertainable economic loss.

262.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, disgorgement, injunctive relief, and attorneys' fees and costs.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff and Class Members demand judgment as follows:

A.    Certification of the action as a Class Action, and appointment of Plaintiff as a Class Representative and her counsel of record as Class Counsel;

B.    That acts alleged above be adjudged and decreed to constitute negligence and violations of the consumer protection laws of New York and New Jersey;

C.    A judgment against Defendants for the damages sustained by Plaintiff and the Classes above, and for any additional damages, penalties, and other monetary relief provided by applicable law;

D.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes, including, but not limited to:

1.     Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

2.     Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

3.     Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

4.     Ordering that Defendants segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, unauthorized third parties cannot gain access to other portions of Defendants' systems;

5.     Ordering that Defendants purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

6.     Ordering that Defendants conduct regular database scanning and securing checks; and

7.     Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

E.     By awarding Plaintiff and Class Members prejudgment and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after service of this Complaint;

F.   The costs of this suit, including reasonable attorney fees; and

G.   Such other and further relief as the Court deems just and proper.

## VII.   <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

DATED: June 16, 2023                              Respectfully submitted,

*/s/ Kevin G. Cooper*
Kevin G. Cooper, Esq.
James E. Cecchi, Esq.
Jordan M. Steele, Esq.
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Tel.: (973) 994-1700
kcooper@carellabyrne.com
jcecchi@carellabyrne.com
jsteele@carellabyrne.com

Matthew R. Mendelsohn (NJ 015582005)
   *Pro hac vice* to be filed
Adam M. Epstein (NJ 027482010)
   *Pro hac vice* to be filed
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel.: (973) 228-9898
mrm@mazieslater.com
aepstein@mazieslater.com

*Attorneys for Plaintiff and the Proposed Class*
